**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1750-WJM-NYW

CHRIS SEVIER,
JOAN GRACE HARLEY,
JOHN GUNTER, JR., and
WHITNEY KOHL,

       Plaintiffs,

v.

JOHN HICKENLOOPER, in his Official Capacity as Governor of Colorado,
CYNTHIA COFFMAN, in her Official Capacity as Attorney General,
MATT CRANE, in his Capacity as Supervisor Marriage License and County Recorder
of Arapahoe County,
STACY WORTHINGTON, in her Capacity as Assistant Attorney General in Colorado,
and
AUBREY ELENIS, Director of the Colorado Civil Rights Division,

       Defendants.

---

Civil Action No. 17-cv-1666-WJM-NYW

JOAN GRACE HARLEY,
CHRIS SEVIER,
JOHN GUNTER, JR., and
WHITNEY KOHL,

       Plaintiffs,

v.

MASTERPIECE CAKE SHOP LTD. and
JACK PHILLIPS,

       Defendants.

---

**ORDER DISMISSING ALL CLAIMS WITH PREJUDICE**

---

This matter comes before the Court on the following filings:

In Case No. 17-cv-1666-WJM-NYW:

- Defendants' Motion to Dismiss and Motion for Involuntary Dismissal (ECF No. 46);

- Defendants' Motion to Dismiss Amended Complaint and Motion for Involuntary Dismissal (ECF No. 91);

In Case No. 17-cv-1750-WJM-NYW:

- the State Defendants' Motion to Dismiss (ECF No. 89);

- Defendant Crane's Motion to Dismiss (ECF No. 97);

- Defendant Crane's Motion to Dismiss Plaintiffs' Complaint Doc. 101 (ECF No. 104); and,

- the State Defendants' Motion to Dismiss Amended Complaint (ECF No. 105).

The Court's Order also arises from the previously-entered Orders on Pending Filings and Case Procedures (ECF No. 80 in both cases), as well Plaintiffs' other filings, as cited below.

## I.  BACKGROUND

Plaintiffs, proceeding *pro se*, initiated these two actions in July 2017.  Plaintiffs' filings describe Plaintiff Sevier as a "machinist," with a professed sexual orientation of "Objectophilia."  (*Sevier*, ECF No. 101 ¶ 1, 25.)  Plaintiffs plead that Plaintiffs Gunter, Harley, and Kohl are polygamists and that Plaintiff Gunter "wants to marry multiple

wives in Colorado."  (*Id.*, ¶ 25; Harley, ECF No.75 ¶ 1.)[1]  In Case No. 17-cv-1666-WJM-NYW, Plaintiffs sued Defendants Masterpiece Cakeshop, Ltd., and its proprietor, Mr. Jack Phillips (the "Cakeshop Defendants").[2]  In Case No. 17-cv-1750, Plaintiffs sued the Governor of Colorado, other state officials, and the Clerk and Recorder of Arapahoe County, Colorado (together, the "State Defendants," unless addressed separately).

In these cases, Plaintiffs seek, respectively, to compel the Cakeshop Defendants to provide them with wedding cakes or related services, and to have the State Defendants issue them marriage licenses or to otherwise legally recognize Sevier's professed desire to marry a computer and Gunter, Harley, and Kohl's professed desire to enter a polygamist marriage.

Following proceedings which the Court has summarized previously and does not repeat here, the Court entered Order[s] on Pending Filings and Case Procedures simultaneously in both cases.  (*Sevier*, ECF No. 80; *Harley*, ECF No. 80.)  These Orders overruled Plaintiffs' frivolous Rule 72 objections to procedural and case management actions taken by U.S. Magistrate Judge Nina Y. Wang, none of which had any dispositive effect on any of Plaintiffs' claims.  (*Sevier*, ECF No. 80 at 3–6.)

The Court also found that "pervasive failures" in Plaintiffs' improperly-filed motions for summary judgment warranted striking those motions, again, without

---

[1] This Order cites to docket citations in Case No. 17-cv-1666-WJM-NYW as *"Harley*, ECF No. __,"* and to docket citations in Case No. 17-cv-1750-WJM-NYW as *"Sevier*, ECF No. ___."*

[2] The Cakeshop Defendants are also the Petitioners in *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, U.S. Supreme Court Case No. 16-111.

3

reaching the merits of any claims.  (*Id.* at 6.)  In addition, the Court entered the following rulings addressed to Plaintiffs' then-clear pattern of consistently abusive docket filings in both cases:

> [1.] Plaintiffs have rapidly cluttered the docket of this case with extraneous materials, principally including declarations of non-parties which bear no identified connection either to the material facts of this case or to any pending motion or pleading permitted by the Federal Rules of Civil Procedure or the Rules of this Court.  (*See, e.g.*, ECF Nos. 3–11, 22–26, 60, 77.)  These materials serve only to unnecessarily confuse and congest the docket, thus obstructing the orderly advancement of this case.  Pursuant to the Court's inherent power to control its docket, such extraneous filings are subject to being summarily stricken. The Court's docket is not a forum in which Plaintiffs may freely re-publish documents unauthorized by the Federal Rules which bear no connection to any pending pleading or motion.

> [and]

> [2.] [T]he most pervasive feature of Plaintiffs' filings to date has been their resort to histrionic and absurd *ad hominem* attacks, insults, and threats against Judge Wang.  Such filings are entirely unacceptable. * * *  Plaintiffs are hereby ORDERED to **immediately** cease all *ad hominem* attacks on Judge Wang.  This Court can only adjudicate Plaintiffs' claims on their merits if Plaintiffs address their filings to those merits, without resort to baseless *ad hominem* attacks. Further insults and attacks of this kind ***will not be tolerated***. Any pleadings—whether already docketed or filed in the future—which contain *ad hominem* attacks on any other judicial officer of this Court may be summarily stricken.  ANY future violations of this Order may also subject Plaintiffs to sanctions, including being held in contempt of Court. Plaintiffs are hereby specifically put on notice that such possible sanctions may include this Court ordering that **all of Plaintiffs' claims be dismissed with prejudice and attorney's fees and costs being awarded to one or more Defendants**.  Plaintiffs will proceed by showing appropriate and due respect to all judicial officers of this Court, or they

4

will not proceed at all.

(*Sevier*, ECF No. 80 at 7–9 (emphasis as in original).)

Shortly after the Court entered those Orders, Plaintiff Sevier filed motions in both cases, for the first time arguing that the undersigned was also biased, and seeking the recusal of both Judge Wang and the undersigned.  The Court recently denied these motions, noting they were themselves flagrantly and intentionally violative of the Court's admonition against *ad hominem* attacks.  (*Sevier*, ECF No. 120; *Harley*, ECF No. 110.)

In addition, Defendants in both cases have filed motions to dismiss all claims, and have renewed those motions following amendment of Plaintiffs' claims.  Defendants argue, *inter alia*, that the Court lacks jurisdiction, that Plaintiffs have failed to state any viable claim for relief, and that Plaintiffs' claims should be involuntarily dismissed under Rule 41(b) and/or the Court's inherent authority.  Those motions are ripe for determination.  (*Harley*, ECF Nos. 46, 91; *Sevier*, ECF Nos. 89, 97, 104, 105.)

## II.  ANALYSIS

### A.    Involuntary Dismissal of all Claims is Warranted

As quoted above, the Court could not have been any more clear in its previous warning to Plaintiffs that *any* further misconduct in this litigation, and in particular further *ad hominem* attacks, would not be tolerated and would likely lead to dismissal.  (ECF No. 80.)  Plaintiffs responded to this Order promptly and contemptuously by doubling down their bizarre and repetitive attacks on Judge Wang and the Court.

For example, the same day the Court entered its prior Orders, Gunter made a filing stating that Judge Wang's "loyalty lies with the Secular Humanists on the judiciary

5

and not the Constitution," and the "[t]he Court is on notice that if it in any way obstructs justice that the Plaintiffs will strip it of jurisdiction, file elsewhere and press both for impeachment and prosecution . . . for treason."  (ECF No. 81 at 1–2.)

A few days later, Gunter accused Judge Wang of being "characterless," "dishonest," and "completely unhinged."  (ECF No. 84.)  In the same filing, he argued for an "Asian wall" removing Judge Wang and threatened "quid pro quo" reprisals against the Court if it declined to agree with Plaintiffs' positions:

> If Magistrate Wang wants the Plaintiffs to be difficult, the Plaintiffs have the time and resources to be beyond difficult * * * the Plaintiffs will haul [the Court] into District Court in D.C. and use their influence to press the Senate to impeach [Judge Wang] in order to make an example of her.  The District Court need not to [*sic*] pretend that this is not a form of civil war—it is.  If the District Court does not think that the Plaintiffs have that kind of influence, this lowly District Court in isolated Colorado can put that to the test to the Plaintiffs residing in the District of Columbia.  See Quid pro quo.

(ECF No. 84 at 1–2.)

Plaintiff Sevier (the most frequent filer in these actions, and the Plaintiff in a large number of comparably meritless lawsuits) similarly filed a Motion to Reconsider (evidently addressed to some or perhaps all of the Court's prior rulings), asserting that "neither [Judge Wang nor the undersigned] are fit to be on this case," that the undersigned "has an emotional problem" and should be impeached, that the Court "is in a persist [*sic*] state of infidelity," and representing that this Court is "in the cross hairs of the Judge Advocate General" (a phrase by which the Court understands Sevier to mean the Court is in *his* "cross hairs," since he frequently refers to himself as a "former Judge Advocate General").  (*See Sevier*, ECF No. 93 at 1–5.)  On October 16, 2017, Sevier

6

filed a further Declaration offering "[i]t is my opinion and observation that both Magistrate Judge Wang and Martinez's participation in this action has continued to be unethical and constitutes judicial misconduct," and that "the two justices assigned to this action should be impeached." (*Sevier*, ECF No. 98 at 3–4.)[3]

On October 2, 2017, Plaintiffs Harley and Kohl signed and filed a document accusing Judge Wang of being "impertinent," "childis[h]," and "harassing the Plaintiffs," and reciting, *inter alia*, "[t]he slogan on the t-shirt should read 'Magistrate Wang harangues.' Moreover, the Plaintiffs expect Mastriate [*sic*] Wang to self-report to the Colorado Ethics commission . . . ." (*Sevier*, ECF No. 85 at 10–11.) In a similar filing on October 19, Harley and Kohl claimed "[n]ever in the History of the Courts in Colorado has their [*sic*] been the degree of sua sponte self-help judicial activism put on display by a Magistrate in controversy where the was already [*sic*] an abundant probable cause to suspect the court of intellectual dishonesty and judicial malpractice." (ECF No. 99 at 2.)[4]

---

[3] The Court's summary of Plaintiffs' improper filings, and the additional citations found in footnotes below, are illustrative only. Many, perhaps most, of Plaintiffs' filings have consisted in substantial part of *ad hominem* attacks against the Court (and sometimes against Defendants or their counsel), and have included a variety of wholly extraneous materials. (*See, e.g.*, *Sevier*, ECF No. 80 at 8 n.4 & ECF No. 120 at 2 n.3 (collecting additional examples)). However, the Court declines to expend its time attempting to exhaustively catalog Plaintiffs' misconduct in its entirety, citing only illustrative samples. Suffice to say, nearly all of Plaintiffs' filings since the Court's Orders of September 29, 2017 have been sanctionable or, at a minimum, subject to being stricken for violation of the Court's Orders and/or D.C.COLO.LCivR 7.1(i). Moreover, for simplicity's sake, most of the Court's docket citations are drawn from the *Sevier* case (No. 17-cv-1750-WJM-NYW), but Plaintiffs have engaged in the same sanctionable conduct in both cases.

[4] These filings signed by Harley and Kohl bear a clear, often verbatim, resemblance to several of Sevier's and/or Gunter's filings, corroborating the Court's view that Sevier has been engaged in the unauthorized practice of law by acting on behalf of the other *pro se* Plaintiffs.

In addition, Plaintiffs have violated the Court's Orders by continuing to file voluminous extraneous materials in the docket.  Notwithstanding the Court's prior directive, Plaintiffs have persisted in filing highly duplicative motions,[5] docketing materials from other cases (sometimes having re-captioned the filings, sometimes not),[6] submitting declarations that pontificate the views of non-party declarants with no connection to any fact or party in this case,[7] and docketing a large number of Internet-sourced media reports (often publicity reporting on Plaintiffs and their many lawsuits), opinion pieces, or correspondence between Plaintiffs and various non-parties regarding other disputes.[8]

Plaintiffs seem to believe such materials support their claims in some fashion, but, as the Court previously explained and cautioned, such filings are unauthorized by any court rule or procedure, are unrelated to any pending issue in this case, and serve only to extensively clutter the docket and impede any attempt to discern and adjudicate Plaintiffs' arguments.  Such filings reflect only Plaintiffs' attempts to use the Court's docket in a manner akin to a blog where they publicly disseminate their views, but with no bearing on the adjudication of any justiciable case or controversy between the parties.  Moreover, given the Court's prior clear warning, the Court can only view

---

[5] *See, e.g.*, *Sevier*, ECF Nos. 74, 76, 78, 81, 100.

[6] *See, e.g.*, *Sevier*, ECF Nos. 108-2, 108-3, 119-2, 119-5.

[7] *See, e.g.*, *Harley*, ECF No. 101 ¶ 3 ("This sworn statement discusses the reality and power of absolute truth and intends to appeal to Courts' and legislatures' common sense . . . ."); *Harley*, ECF No. 109 ¶ 11 ("This is America.  This is not Iran. * * * As a taxpayer, I demand that all 50 States and Federal Government disentangle itself from the respecting homosexual ideology—overruling all policies that endorse such practices.").

[8] *See, e.g.*, ECF Nos. 100-1, 100-4, 108-1, 119-9.

Plaintiffs' persistence in filing such materials as a willful and repeated violation of the Court's Orders, and a sanctionable misuse of the Court's docket for improper purposes. *See generally* Fed. R. Civ. P. 11(b)(1), (c)(1).

Similarly, the Court's prior Orders could not have been more clear that "no Motions for Summary Judgment may be filed" before Rule 12 motions are resolved, "and in no event before a scheduling order is entered . . . or the Court determines no scheduling Order is required." (*Sevier*, ECF No. 80 at 3.) In direct violation of this Order, Sevier filed an additional motion for summary judgment on October 31, 2017, which, suffice to say, suffers from all the same defects which the Court identified in Plaintiffs' previously-filed motions for summary judgment. (*Sevier*, ECF Nos. 80, 103.)

Given this clear record of flagrant, intentional, and repeated violations of the Court's Orders, the Court will dismiss all of Plaintiffs' claims as a sanction. Involuntary dismissal is authorized by Federal Rule of Civil Procedure 41(b), and the Court may, after giving parties notice and a reasonable opportunity to respond, sanction parties for filings that are presented "for any improper purpose," or which lack support. Fed. R. Civ. P. 11(b)(1)–(3), (c)(1), (3). In addition, the Court's inherent and implied powers grant the Court discretion to dismiss an action as a sanction. *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 918 (10th Cir. 1992) ("It is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice."). This includes the discretion to dismiss an action "for the failure to comply with the rules of civil procedure or the court's orders." *Cohen v.*

*Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010).

To be sure, this authority "must be exercised with restraint," and "is appropriate only in cases of willfulness, bad faith, or [some] fault of petitioner." *Chavez*, 402 F.3d at 1044 (as in original).  In exercising that restraint, the Court considers "a number of factors that may inform the district court's discretion in determining whether dismissal is an appropriate sanction." *Id.*[9]  All of the relevant considerations favor dismissal here.

First, "the degree of actual prejudice to the defendant[s]," *Chavez*, 402 F.3d at 1044, has been meaningful.  Defendants have been forced to review and respond to a flood of frivolous and abusive filings.  The expenditure of Defendants' time and resources was not only required by Plaintiffs' meritless claims in the first instance, but has been exacerbated by Plaintiffs' litigation misconduct, given Plaintiffs' needless duplication of filings made only for the purpose of raising *ad hominem* attacks against the Court (and sometimes Defendants) and Plaintiffs' refusal to accept and live within Court Orders that might permit these actions to advance in something resembling a normal procedural fashion.  Such undue expense and prejudice will only get worse if these cases go forward.

Second, "the amount of interference with the judicial process," *id.*, has been significant.  As previously ordered, the Court cannot address the parties' arguments on

---

[9] *See also Ehrenhaus*, 965 F.2d at 921 ("Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." (citations and internal quotation marks omitted; alterations incorporated)).

their merits when they are obscured behind a wall of repetitive *ad hominem* vitriol.  Too many scarce judicial resources have already been consumed by Plaintiffs' misuse of the Court system.  This Court's docket is far too busy to tolerate the diversion of further resources away from parties with viable claims who are willing to have them resolved in compliance with the Court's Orders and Rules.  Plaintiffs, by contrast, proceed only in bad faith.

Third, "the culpability of the litigant[s]," *id.*, is clear and blatant, given the repeated and willful violation of Court Orders and Plaintiffs' contemptuous defiance of even simple procedural directions which in no way adjudicate Plaintiffs' claims, such as setting a timeframe for the filing of motions for summary judgment.  As to Plaintiffs' *ad hominem* attacks, their frequency, repetitiveness, and vehemence speak for themselves.

Fourth, the Court has amply and clearly "warned the part[ies] in advance that dismissal of the action would be a likely sanction for noncompliance," *id.*, as this warning was express, entered in both cases, and heavily emphasized in the Court's prior Orders, which also made it very clear that *any* further *ad hominem* attacks could be grounds for sanctions including dismissal.  (*Sevier*, ECF No. 80; *Harley*, ECF No. 80.)

Fifth, and significantly, "the efficacy of lesser sanctions" consideration,  *Chavez*, 402 F.3d at 1044, weighs strongly in favor of dismissal.  Given Plaintiffs' repeated, flagrant, and intended violations of the Court's Orders, and their obvious and oft-professed view that this Court's Orders ought not to even apply to them, it is clear to the

Court that any sanction short of dismissal would serve only to invite even greater abuses of judicial process, would lead to the re-filing of frivolous motions, would multiply more non-compliant and abusive pleadings, would further obscure any arguable merits of Plaintiffs' claims and arguments behind continuing attacks on the Court, and would, quite simply only waste the time and efforts of all involved even further, while delaying the inevitable dismissal of claims which Plaintiffs refuse to advance in a cognizable fashion.[10]

Thus, when weighing all of the relevant factors, this case presents the rare instance in which it is appropriate to dismiss Plaintiffs' claims entirely and with prejudice, as a sanction for Plaintiffs' willful and persistent litigation misconduct. *Accord White v. City of Albuquerque*, 639 F. App'x 520, 521 (10th Cir. 2016) (no abuse of discretion in dismissing *pro se* litigant's claims mid-trial as sanction for "repeated violations of the court's orders and the rules of evidence"); *Reinhardt v. Hopps*, 590 F. App'x 755, 759 (10th Cir. 2014) (affirming dismissal of *pro se* litigant's claims as a sanction for failing to comply with pretrial deadlines and other procedural requirements where plaintiff "had been warned," *inter alia*, "that a failure to appear . . . may also result in sanctions, up to and including dismissal of the action").

To be clear, the chief problem with Plaintiffs' *ad hominem* attacks is not that the

---

[10] Non-party counsel entered an appearance on behalf of Plaintiffs Gunter, Harley, and Kohl in the *Sevier* case on October 30, 2017.  (*Sevier*, ECF No. 102.)  In other circumstances, this consideration might mitigate the potential for future abuses and caution against dismissal in favor of a lesser sanctions.  However, counsel has not entered an appearance in the *Harley* case.  Moreover, having made only two filings, it is evident from their close resemblance to earlier *pro se* filings, that counsel is proceeding by filing Briefs written in whole or in part by one or more of her clients.  (ECF Nos. 106, 107.)  This provides little reason to believe a lesser sanction would be effective.  In any event, Plaintiffs claims will also clearly fail on their merits. *See* Part II.B., *infra*.

Court is personally insulted, although Plaintiffs' obstreperous disrespect for the very courts they hope will hear their claims is very troubling.  The real problem is Plaintiffs' refusal to accept the Court's Orders, and their insistence on painting over the justiciable issues (if any there may be) with bile.  This reveals, ultimately, that while Plaintiffs may feel strongly about the self-righteousness of their views, they have no demonstrated desire to bring a justiciable case, nor any willingness to do the patient work of advancing claims through normal litigation.  Rather, Plaintiffs seek to use the Court primarily to garner attention, and have proved more than happy to defy Court orders if they believe that will advance their goals.  Since the Court cannot and will not permit a case to proceed in this fashion, dismissal is the only course of action that satisfies the interests of justice.  *See Ehrenhaus,* 965 F.2d at 918.

Finally, it bears noting that Plaintiffs have themselves repeatedly boasted that this case is only one entry in their nationwide effort at judge- and forum-shopping. (See *Sevier*, ECF No. 120 at 8 n.5.)[11]  The large number of similar lawsuits which Plaintiffs (particularly Sevier) have brought around the country reflects an improper "shotgun" attempt to locate a sympathetic judge, and a tremendous abuse of judicial resources.  Given other clear grounds for dismissal, the Court need not, and therefore does not, reach the issue here, but views it as likely that Plaintiffs' flagrant and self-professed judge-shopping, by itself provides a separate and sufficient grounds for

---

[11] *See also, e.g.*, *Sevier*, ECF No. 93 at 2 (representing that "in direct result of" Plaintiffs' displeasure with this Court's procedural rulings, "Plaintiffs have filed nine additional lawsuits spread across the different circuits. * * * there are now grand total of three lawsuits of this nature pending in states in the 10th Circuit.") The docket is replete with instances of similar representations regarding the number and geography of Plaintiffs' many lawsuits, the Court again does not attempt to cite all such instances.

dismissal. *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998) ("Our case law supports the proposition that a district court has the inherent power *sua sponte* to dismiss an action for judge-shopping.").

**B.     All of Plaintiffs' Claims Are Subject to Dismissal**

In addition, the Court will briefly address Plaintiffs' claims as pled.  Initially, Plaintiffs' complaints, particularly in the *Sevier* action, do not meet the pleading requirements of Federal Rule of Civil Procedure 8(a).  Plaintiffs' Complaint (*Sevier*, ECF No. 101) runs some 42 pages, including a substantial volume of extraneous material, such as quotes of public officials regarding other lawsuits filed by Sevier (*see, e.g.*, *id.* ¶¶ 51–52), various legal arguments and lengthy quotes of legal decisions (*see, e.g., id.*, ¶¶ 6, 11–13 & notes 4, 6–7), Plaintiffs' own opinions regarding the meaning of the constitution and other legal matters, (*see, e.g.*, id. ¶¶ 53–54), and a variety of other material that is clearly *not* a "short and plain statement" of facts giving rise to Plaintiffs' claims for relief.  Fed. R. Civ. P. 8(a).

Among other defects, Plaintiffs' Complaints therefore suffer "[p]rolixity in pleading" and contain "a morass of irrelevancies" and therefore fail to serve the purposes of Rule 8(a), including "to force plaintiffs to state their claims intelligibly," and Plaintiffs' claims are subject dismissal on that basis.  *See Baker v. City of Loveland*, 686 F. App'x 619, 621 (10th Cir. 2017) (internal quotation marks omitted; citing *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) and *Knox v. First Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952)).  More broadly, the Court is in agreement here with the observation in another of Sevier's many cases that "the precise basis of Plaintiff[s'] claims is largely indecipherable due to the incredibly verbose and sermonizing nature of

his pleading." *Sevier v. Apple*, *Inc.*, 2015 WL 4873122, at \*7 (M.D. Tenn. Aug. 13, 2015.)

In addition, in the *Harley* case, the Cakeshop Defendants argue that Plaintiffs' Complaint should be dismissed for failure to adequately show that Plaintiffs exhausted their administrative remedies before bringing their sole claim under the Colorado Anti-Discrimination Act.  (ECF No. 91 at 4–5 (citing Colo. Rev. Stat. § 24-34-306(14) and *Jackson v. City & Cnty. of Denver*, 2012 WL 4355556, at \*2 (D. Colo. Sept. 24, 2012)).) Since Plaintiffs never filed any Response to Defendant's Motion, instead filing a series of Motions to Stay which were not granted, dismissal is warranted on the basis that Plaintiffs have conceded this argument.

Overarchingly, however, Plaintiffs' claims do not state a plausible claim for relief and are also subject to dismissal under Rule 12(b)(6) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For all that is obscure in Plaintiffs claims, this much is clear:  Plaintiffs ask that they be granted marriage licenses, treated as married, and given the benefits of marriage by both the State Defendants and the Cakeshop Defendants, arguing that they are entitled to such treatment under *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015).  But this is, as Plaintiffs' acknowledge, a crude stalking horse, since what Plaintiffs truly seek is to have *Obergefell* reversed.

The Court has rather serious doubts as to whether Plaintiffs' claims present a justiciable case or controversy.  Plaintiffs acknowledge that the outcome they want is not to receive the benefits of marriage for themselves, but to deny those benefits to others who are not party to this case, namely all same-sex couples.  It therefore does not appear that Plaintiffs are actually seeking any redress which the Court could grant

15

them, and to the extent they do seek the benefits of marriage, that request is obviously (again, admittedly) brought in bad faith.

Setting those doubts aside, however, Plaintiffs claims fail because *Obergefell* did not recognize any right they claim. *Obergefell* did not address any right of "machinists" or polygamists to marry, nor does its reasoning extend to Plaintiffs' claims here, which do not relate to the "two-person union unlike any other in its importance" addressed in *Obergefell*. 135 S.Ct. at 2599. To the extent Plaintiffs wish to extend *Obergefell*, even assuming that claim is not sanctionably frivolous and brought in bad faith under Rule 11(b)(2), no legal authority supports their claim. The Court therefore joins the several other courts which have found Plaintiffs' claims to be "implausible, fanciful and frivolous," and have unanimously rejected them. *See Sevier v. Bevin*, 2017 WL 1217162, at *2 (E.D. Ky. March 31, 2017) (internal citations omitted; collecting cases).

### III.  CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1.      All of Plaintiffs' claims and both Case No. 17-cv-1666-WJM-NYW and Case No. 17-cv-1750-WJM-NYW are DISMISSED WITH PREJUDICE as a sanction for Plaintiffs' violation of Court Orders, in particular of their continued *ad hominem attacks*, and for non-compliance with the Federal Rules of Civil Procedure, violation of D.C.COLO.LCivR 7.1(i), other litigation misconduct described above, and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6);

2.      The following Motions to Dismiss are GRANTED:

a.      In Case No. 17-cv-1666-WJM-NYW: ECF No 91;

b.      In Case No. 17-cv-1750-WJM-NYW: ECF Nos. 104 & 105;

16

3.      All other pending motions, recommendations, and objections are DENIED AS

        MOOT;

4.      The Clerk is DIRECTED to TERMINATE these actions and all pending motions;

5.      Defendants shall have their costs upon compliance with D.C.COLO.LCivR 54.1;

        and,

6.      The Court will entertain requests for an award of attorneys' fees upon motion of

        any Defendant and upon any grounds Defendants may raise; such motion(s), if

        any, must be filed no later than **February 15, 2018**.

        Dated this 18th day of January, 2018.

                                        BY THE COURT:

                                        _____

                                        William J. Martínez
                                        United States District Judge